IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 23-CR-857 DHU |
| vs. | ) | |
| | ) | |
| **JUSTIN AGUINO,** | ) | |
| **a.k.a., JUSTIN V. AQUINO JR.,** | ) | |
| | ) | |
| Defendant. | | |

**<u>UNITED STATES' RESPONSSE TO DEFENDANT'S SENTENCING MEMORANDUM</u>**

The Defendant, Justin Aguino, a former Ohkay Owingeh Police Department Officer, abused his position of public trust when he elected to tip off a local drug dealer under investigation by Homeland Security Investigations and the Region III Drug Enforcement Task Force. On February 26, 2020, Aguino placed a cell phone call to J.M., an individual Aguino grew up with. J.M. was a subject in a local drug investigation. Law enforcement captured and recorded Aguino's call to J.M. pursuant to Title III electronic surveillance.

On February 26, 2020, Aguino crossed a line. Although he had been a certified law enforcement officer for five years, Aguino shared sensitive law enforcement details with J.M. and alerting J.M. to a then ongoing federal investigation. Aguino, not only shared the existence of an investigation, he discussed another officer's possible association with the investigation and affirmed J.M. belief that a specific individual was an informant. When Aguino called J.M., he knowingly elected to interfere with an ongoing investigation. Aguino chose to covertly assist drug dealers in his community. Defendant's violation of the public trust warrants a sentence of 14 months incarceration.

Prior to the instant offense, on January 8, 2020, Aguino provided J.M. with another officer's contact information, and upon J.M.'s request, Aguino agreed to tell that officer to call J.M. On that date, J.M. directed Aguino to save J.M.'s phone number in case Aguino 'needed' anything. Subsequently, on February 26, 2020, Aguino called J.M. and told him he (Aguino) heard that J.M. had talked with John (the other police officer). Doc. 90 at ¶14. Aguino also referenced a third person – a civilian. *Id.* Aguino affirmed J.M.'s belief that the named individual was a law enforcement source. *Id.* J.M. noted that he knew who (the alleged civilian source) Aguino was referring to. *Id.* Aguino told J.M., "Uh, don't f**ck with that sh*t", bro." *Id.* During the call, Aguino told J.M. not to trust that guy or the other officer. *Id.* Aguino said the guy (the civilian) was a "snitch" who is "working for the feds." *Id.* As the conversation went on, J.M. noted that he would draw a line and told Aguino that whatever he would tell him would stay between them. *Id.* J.M. suggested that when he was speaking to John, John told him, "Hey, bro', don't f**ck with that due bro'. *Id.* He kinda told me the same thing, too." *Id.* Aguino responded, "Nah, bro. Bro', that fool that you were talking about, bro', got the feds on him. *Id.* J.M. asked "Really?" *Id.* Aguino responded, "snitch like F**ck bro'. He's working for the feds." *Id.*

Aguino's recognition of his culpability and wrong doing is evident in Aguino's subsequent comments to J.M. Aguino cautioned J.M. that he (Aguino) could "lose my whole fuckin' shit over it," and indicated that he was only telling J.M. because J.M. was his boy/buddy. *Id.* Aguino reiterated, "[D]on't fuck with it at all bro." *Id.* Aguino also told J.M. to be careful with the officer. *Id.* Aguino noted that the other officer did not grow up in that area. *Id.* Aguino said that he (the other officer) 'was cool,' but would draw a line of what he would say because of the officer's job. *Id.* Aguino and J.M. agreed to keep the information between them.

*Id.* Aguino not only obstructed a federal drug investigation, but he also actively placed others at risk by stating that the individual was a "snitch."

On May 24, 2022, when Aguino was interviewed by FBI agents, he denied knowledge of and involvement in the crime to which he has pled guilty. Doc. 90 at ¶ 15. Defendant now suggests that he was attempting to "infiltrate a network and befriend a local dealer." Doc. 94 at 3. In his request for a time served sentence, Aguino now asks the Court to credit his claim that he foolishly hoped "he would be able to obtain more information on people and their involvement, which would lead to arrests and the safety of his community, and advancement of his career." *Id.* Aguino's newly advanced community service motive for tipping a drug dealer off, ignores his own statements on the recorded call and his statements to the FBI.

Notably, when FBI Special Agents confronted Aguino with the recorded call between he and J.M., Aguino stated he did not recall the call. Doc. 90 at ¶16. Aguino went so far as to state that he was not sure if that was his voice on the call. *Id.* Aguino denied knowing anything about the investigation of J.M. or even knowing that J.M. sold drugs. Doc. 90 at ¶ 15. Aguino claiming he only learned about J.M.'s drug dealing after J.M. was "busted." *Id.* Aguino also denied knowing how J.M. could have been tipped off. *Id.* Aguino further denied that J.M. asked him for help with illegal stuff. *Id.* Aguino denied providing J.M. with any information. *Id.*

Clearly, Aguino could not be *unaware* of the investigation against J.M., as he claimed when questioned by the FBI in 2024, and simultaneously seeking to infiltrate the drug organization and further the investigation. Defendant's new claim of a naive and positive motivation for his actions is contradicted by the recorded call and his recorded interview with the FBI. Although Aguino continued to claim that he did not know anything about a confidential source and that he had no idea why he would tell J.M. anything, Aguino ultimately offered that

3

he was being "stupid" on that call. *Id.* Aguino also eventually confirmed that the phone number captured in that call belonged to him. *Id.* Aguino did not act under duress or compulsion. He simply set aside his obligations as an officer in favor of his relationship with J.M.

The United States submits that the offense conduct outlined in the PSR, fairly and accurately states the events occurring on February 26, 2020. *Id*. at ¶¶ 14. The United States submits that a sentence of 14 months is sufficient, just and reasonable, but not greater than necessary to comply with the sentencing considerations outlined in 18 U.S.C. § 3553(a)(2). The United States does not have any objections to the Presentence Report (PSR) filed on June 5, 2026. Doc. 90. The United States submits that the sentencing guidelines contained within the PSR are properly calculated. The sentencing guidelines, based upon a total offense level of 11 and a criminal history category of I, provide for a guideline sentence of 8 to 14 months and not more than 3 years of supervised release. *Id*. at ¶¶ 73 and 76. The parties reached a plea agreement pursuant to Rule 11(c)(1)(C), that a specific sentence of 0 to 15 months imprisonment is the appropriate disposition in this case. *Id.* at ¶ 3. Given the Defendant's lack of financial resources, the United States is not recommending a fine. The United States further recommends that the term of incarceration be followed by 3 years of supervised release, to include each of the recommendations set forth in Attachment A of the PSR, and the mandatory imposition of special penalty assessments totaling $ 100.00.

Defendant states that he is in good health. *Id.* at ¶ 58. He has not been diagnosed with any emotional or mental health issues. *Id.* at ¶ 59. Defendant reported a substance abuse history of marijuana and alcohol. *Id.* at ¶ 60. Defendant first used marijuana and the age of 17 and reports that he did not use marijuana again until he lost his job in 2023. *Id.* Defendant reports that he first used alcohol at the age of 21. *Id.* His last use was on April 22, 2024, while on

pretrial release. *Id.*

The Defendant's was raised in a caring family and had a good family. *Id.* at ¶ 47. Defendant is a high school graduate and attended Santa Fe Indian School. *Id.* at ¶ 62. Defendant has certifications from the Federal Law Enforcement Training Center (FLETC). *Id.* He is certified to administer cardiopulmonary resuscitation (CPR) and Narcan. *Id.* The Defendant reports having skills in technology, labor, construction, art and carving. *Id.*

Defendant has little criminal history. He was arrested in 2021, for disorderly conduct. *Id.* at ¶ 42. The charge was dismissed. *Id.* Defendant has an active bench warrant out of the Isleta Tribal Court for Failure to Appear at a hearing on child support. *Id.* at ¶ 43.

Aguino is unmarried and has at least two children. *Id.* at ¶¶54-57. A petition to establish parentage, child support and health care coverage for a third child is pending. *Id.* at ¶ 57.

Defendant's background is fairly unremarkable, but for the fact that he was a certified law enforcement officer prior to committing this offense. Defendant suggests that he simply made a 'mistake' and was 'stupidly' trying to ingratiate himself with J.M. to further the drug investigation. Defendant further suggests that "[N]ot only is he not a threat to public safety," and that "he remains devoted to protecting the public, even without a job as law enforcement." Doc. 94 at 2. Aguino's actions and words demonstrate, however, that he chose to call J.M. - a drug dealer and aligned himself with that J.M. as opposed to his fellow officers, the public, and the law. Moreover, Defendant's conversation with J.M. about a civilian being a "snitch" had the potential to endanger that person and potentially the public at large.

The United States asks the Court to impose a sentence of 14 months. Defendant violated his position of trust. Among the factors the Court may consider are the goals of deterrence, both general and specific, and punishment. The Court should consider the fact that the Defendant was

trained and federally certified as an officer.  Aguino knew that his actions were criminal and would obstruct a federal investigation aimed at keeping drugs out of the community he was sworn to serve and protect.  As a law enforcement officer, Aguino violated public trust. A sentence of 14 months is a fair, just and reasonable sentence and in accordance with 18 U.S.C. § 3553(a) and *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005).

<u>**Conclusion**</u>

As to Count 1 of the Indictment, Obstruction of Justice, a violation of 18 U.S.C. § 1512(c)(2), there exists a need for the sentence to reflect the seriousness of the offense, to promote respect for the law, provide just punishment, afford adequate deterrence, protect the public and to provide the defendant with needed educational and vocational training and other correctional treatment, pursuant to 18 U.S.C. § 3553(a). Based on the facts and circumstances attendant to the above-captioned matter, the United States submits that a high end guideline sentence of 14 months may be sufficient, but not greater than necessary to comply with the purposes of 18 U.S.C. § 3553(a)(1-7) and the factors addressed in *United States v. Booker*, 543 U.S. 220 (2005). The government further requests that the Court impose each of the conditions outlined in Attachment A of the PSR, for a term of 3 years pursuant to 18 U.S.C. § 3583(b)(2). The United States is not seeking imposition of a fine but does request that Defendant be ordered to pay the $100.00 special penalty assessment for each count and restitution as required by law.

Respectfully submitted,

TODD BLANCHE
Acting Attorney General
RYAN ELLISON
First Assistant United States Attorney

*Niki Tapia-Brito*

NIKI TAPIA-BRITO
Criminal Chief
201 Third Street, Suite 900
Albuquerque, New Mexico 87102
(505) 346-7274

I hereby certify that on June 22, 2026, I filed the foregoing electronically through the CM/ECF system, which caused counsel for the Defendant to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

*Electronically filed on June 22, 2026*
NIKI TAPIA-BRITO
Assistant United States Attorney